# ZUELLY ET AL. *v.* CASPER ET AL.

[No. 19,732.   Filed April 24, 1903.]

COUNTIES.—*Officers.*— *Unlawful Allowances.*—*Recovery.*— *Parties.*—*Suit by Taxpayer.*—Suit may be maintained by resident taxpayers of the county against the county auditor for the recovery, for the benefit of the county, of money wrongfully allowed by the board of commissioners and unlawfully paid to the county auditor in excess of the salary, fees, and compensation to which he was entitled under the statute, where the board of commissioners was requested by plaintiffs to bring the action, and refused to do so.

From Perry Circuit Court; *E. M. Swan*, Judge.

Suit by Adolph Zuelly and others against Martin F. Casper and others. From a judgment for defendants on demurrer to complaint, plaintiffs appeal. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*S. H. Esarey*, for appellants.

*J. L. Suddarth*, *W. T. Zenor*, *M. D. Casper* and *Philip Zoercher*, for appellees.

DOWLING, J.—The appellants, Adolph Zuelly, Henry H. Bielefeld, and Frederick B. Wichser, describing themselves as residents and taxpayers of the county of Perry, in the State of Indiana, brought this suit against the appellee Casper and the board of commissioners of said county

to recover, for the use of the county, some $3,985 charged to have been wrongfully allowed by the said board and unlawfully paid to the appellee Casper, who was the auditor of said county, in excess of the salary, fees, and compensation to which he was entitled under the statute.

The rulings of the court sustaining demurrers to the complaint for the insufficiency of the facts stated, for want of capacity of the plaintiffs to sue, and for a defect of parties plaintiff, are the errors assigned.

The allegations of the capacity in which the plaintiffs sue, and their interest in the subject-matter of the action are followed by the averments that Casper was elected auditor of Perry county at the general election held in November, 1890, and that he duly qualified and entered upon and discharged the duties of the office for the term of four years from and after December 1, 1890; that at the general election held in November, 1894, he was reëlected to said office for the term of four years from December 1, 1894, and that he was duly qualified and entered upon and discharged the duties of said office for said term; that during each of said terms the said Casper received the full amount of the fees and salaries allowed him by law as such auditor; that, under color of his said office of auditor, the appellee Casper, in addition to his lawful fees and salary, taxed and charged against said county divers illegal fees and claims which are itemized and particularly set out, amounting in the aggregate to $3,985; that the said fees and claims were allowed by said board of commissioners, and that said Casper, as such auditor, was by said board authorized to draw his warrants upon the county treasurer for the sum so allowed; that said sums were drawn by and paid to said Casper, who still retains the same, although said moneys were demanded from him by the said board; that more than thirty days before the commencement of this suit the appellants requested said board of commissioners to bring an action against the said Casper for the recovery of

the moneys so received by him, but that said board refused, and still refuses, to do so. The complaint further avers that the suit is brought for the benefit of the county of Perry, and that the board of commissioners of said county is made a defendant to answer as to its interest in said cause.

The objection to the complaint is thus stated in the brief of counsel for appellees: "The appellees insist that under the law of the State of Indiana, and under the facts as disclosed by the pleading in this case, the board of commissioners of Perry county, Indiana, alone, could bring this action against Martin F. Casper as auditor of said county, and that the appellants have no legal right to bring the suit as it was brought in this case." It is further contended in argument that the appellants can not maintain the suit because it does not appear that they have suffered a special injury different from that sustained by the general public in the violation of a duty owing to them as individuals.

The complaint charges and the demurrer admits that the appellee Casper, as auditor, wrongfully received a very large amount of the public revenues of the county, and that he refused to repay this money to the county, to which it rightfully belonged. It also appears, and is admitted by the demurrer, that the board of commissioners of the county refuses to bring suit to recover the moneys so wrongfully withheld. If the appellees are correct, the unfortunate county, by reason of the dishonesty of its officers, is utterly helpless, and nothing can be done by it or by its taxpayers to redress the wrongs to which for eight years it was systematically subjected. If this is the law, the situation is certainly one to be deplored.

Each of the counties of this State is an involuntary subdivision of the State, and a corporation for governmental purposes. Its corporate name is the Board of Commissioners of the County of ———, and such board is the legal representative of the county, having the general management and control of its property and affairs. In most

cases, where money is due or owing to the county, it is the duty of the board·of commissioners to compel its payment, by suit if necessary, and to take all proper steps to protect the rights and interests of the county. But the inhabitants, not the board, constitute the county; and if their interests are neglected or betrayed by the officers charged with the duty of protecting them, all or any of the inhabitants and taxpayers who are injuriously affected by the malfeasance or nonfeasance of the board may in many cases bring an action to prevent a threatened wrong, or to obtain redress for an injury already inflicted upon the county. Nothing is more certain than that the board of commissioners can make no disposition of the public funds except such as is expressly authorized by law. It is equally true that a public officer can receive only such fees, salary, or compensation as is expressly given him by statute. The board can no more make donations of the public revenues to a county officer than it can bestow such favors on private individuals. Taxation is the source of revenue, and the moneys collected by that means can not be applied to any purpose not authorized by law.

The objection urged against the right of a taxpayer to maintain a suit on behalf of the public has been presented in many cases in this court in which the relief sought was an injunction against the unauthorized application of the revenues of the county. Such right has uniformly been upheld. In *Harney* v. *Indianapolis, etc., R. Co.*, 32 Ind. 244, 247, the court, by Frazer, C. J., said: "But it is contended that a taxpayer has no such interest in the funds belonging to the county treasury as will enable him to maintain a suit to prevent unlawful appropriations thereof. We can not regard this question as open to further discussion in this court. It has been a common remedy in this State, and has been sanctioned by repeated judgments here. *Lafayette* v. *Cox*, 5 Ind. 38; *Oliver* v. *Keightley*, 24 Ind. 514. It has been sanctioned elsewhere. *New London* v.

*Brainard,* 22 Conn. 552. It is sanctioned by established principles acted upon and recognized everywhere. The citizen may not be able to protect himself in any other way. If this is not his remedy, he has none. The money drawn from him by taxation may be squandered by unlawful donations to forward all manner of visionary schemes; other contributions may be wrung from him from year to year and wasted in the same way, in defiance of laws carefully framed for his protection, and he would nevertheless be helpless. A more proper case for injunction can not be well conceived than that in which a taxpayer seeks to protect from lawless waste a public fund, which, when dissipated thus, the law will with strong hand compel him to replenish. See *Gifford* v. *New 'Jersey R. Co.,* 2 Stock. 171." The following authorities are to the same effect: *Board, etc.,* v. *Markle,* 46 Ind. 96; *Deweese* v. *Hutton,* 144 Ind. 114; *Town of Winamac* v. *Huddleston,* 132 Ind. 217; *Alexander* v. *Johnson,* 144 Ind. 82; *Nill* v. *Jenkinson,* 15 Ind. 425; Dillon, Mun. Corp. (4th ed.), §§917, 922. So to, it has been held by this court that a citizen and taxpayer has such an interest in the subject as entitles him to examine the records and files of the county auditor's office, under reasonable regulations, and that such right may be enforced by mandamus. *State, ex rel.,* v. *King,* 154 Ind. 621.

The reasons given by the court in support of the right of a taxpayer to maintain an action to enjoin an unlawful disposition of public funds apply with equal force where the wrong has been accomplished, the fund dissipated, and the public officers, whose duty it is to sue for and recover the money, obstinately or corruptly refuse to act. In the case of private corporations, it has often been decided that suit may be brought by a stockholder on behalf of the corporation, against the directors and others for frauds, wrongs, and breaches of trust, and for the recovery from them of money of which the corporation has been de-

frauded; the latter being joined as a defendant. *Dodge v. Woolsey,* 18 How. 331, 15 L. Ed. 401; *Davenport v. Dows,* 18 Wall. 626, 21 L. Ed. 938; *Hawes v. Oakland,* 104 U. S. 450, 460, 26 L. Ed. 827; *Porter v. Sabin,* 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815; *Beach v. Cooper,* 72 Cal. 99, 13 Pac. 161; *Streight v. Junk,* 16 U. S. App. (6th Cir.) 608, 8 C. C. A. 137, 59 Fed. 321; Pomeroy, Eq. Jurisp. (2d ed.), 1095; Thompson, Corporations, §4479; Beach, Priv. Corp., 256.

The legal principle which, under special circumstances, and subject to somewhat narrow restrictions, permits a stockholder to sue for the redress of wrongs or frauds upon the corporation, may, without violence, be extended to the taxpayers of public corporations, where the wrong is apparent, the equity clear, and the officers charged with the duty of protecting the interests of the taxpayers refuse to act. It is also to be observed that the statutes of this State expressly recognize the right of a taxpayer to interpose by appeal for the purpose of defeating allowances made by the board of commissioners without authority of law. §§7858, 7859 Burns 1901, §§5771, 5772 R. S. 1881 and Horner 1901; *Fordyce v. Board, etc.,* 28 Ind. 454; *State, ex rel., v. Benson,* 70 Ind. 481; *Gemmill v. Arthur,* 125 Ind. 258; *Myers v. Gibson,* 147 Ind. 452.

And it is provided in the code of civil procedure that, when the question is one of a common or general interest of many persons, one or more may sue or defend for the benefit of the whole. §270 Burns 1901, §269 R. S. 1881 and Horner 1901; *Tate v. Ohio, etc., R. Co.,* 10 Ind. 174; Pomeroy, Remedies & Remedial Rights (2d ed.), §§388-390.

The precise question before us has been decided by the supreme court of Wisconsin. In *Land, etc., Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964, 69 Am. St. 915, the action was brought to charge the defendant as trustee for Vilas county for moneys claimed to have been corruptly

drawn by him from the treasury of the county. The complainants showed that they were taxpayers of the county; that they had applied to the board of supervisors, and demanded that an action be brought by the board to recover the moneys afterwards sued for by the complainants; that the board refused to take any action; and that thereupon suit was instituted in behalf of the complainants and other taxpayers. A demurrer to the complaint was overruled, and the defendant appealed. Objection was made in that case, as in the case at bar, that the plaintiffs could not maintain the action because their interest was indirect, and could be enforced only in the name of the board of supervisors. In disposing of this objection, in the course of a carefully considered opinion, the court, by Marshall, J., said: "The general rule is that where a cause of action exists in favor of a corporation, and its governing body refuses to enforce it, any member thereof may do so by suing in equity in behalf of himself and all others similarly situated. Thompson, Corporations, §4479; *Doud* v. *Wisconsin, etc., R. Co.,* 65 Wis. 108; *Hinz* v. *Van Dusen,* 95 Wis. 503. That applies to public as well as private corporations. *Willard* v. *Comstock,* 58 Wis. 565; *Frederick* v. *Douglas Co.,* 96 Wis. 411; *Quaw* v. *Paff,* 98 Wis. 586; Dillon, Mun. Corp., §915. And by force of a statute of this state, a creditor of a corporation has sufficient interest therein to entitle him to maintain the action. *South Bend, etc., Co.* v. *George C. Cribb Co.,* 97 Wis. 230; *Gores* v. *Day,* 99 Wis. 276. The purpose of the remedy in such cases is not to interfere with the exercise of legal discretion on the part of those charged with the primary duty of enforcing corporate rights, but to furnish relief where there is an unjustifiable neglect or refusal to exercise such discretion. Neither is the remedy confined to the one which the corporation may invoke, whether equitable or legal. The remedy afforded to a member of a corporation is necessarily in equity, for he has no direct interest to be protected by a

personal action. He must proceed in equity or not at all, joining the corporation as a party in the capacity of trustee for all its members. * * * So, the rule is firmly established that where a cause of action exists in favor of a corporation, whatever be its proper remedy, if its governing body refuses to proceed, justice can not thereby be defeated, for those upon whom the injury indirectly falls may obtain redress in equity. It certainly would be a strange situation if unfaithful officials could plunder a county in the manner alleged in the complaint and be free from danger of being compelled to return their ill-gotten gains, or make good the injury caused by their corrupt conduct, because they had retired from office and the corporation, through its proper officers, unjustly refused to prosecute them. The intelligence and wisdom of the lawmakers, and the boasted power of courts of equity to lay hold of situations where legal remedies stop, and prevent a failure of justice flowing from defective legal remedies, are not rightly subject to such a criticism. As well said by Chief Justice Orton in *Willard* v. *Comstock,* 58 Wis. 565, in substance: If, for conduct such as detailed in the complaint, there is no remedy, and there is none unless this be proper, the taxpayers are at the mercy of dishonest officials and must stand by and see the public treasury plundered, bound helpless by technical rules of law. The idea is simply preposterous, and that is all that need be said about it. No such situation exists, as is sufficiently shown by what has preceded. The powers of courts of equity are broad and absolute enough to fit all situations where justice requires a remedy. While guided by precedents, equity is not bound by them, but may meet new situations as they arise, so that in the race between it and the ingenuity of unfaithful officials, the former will generally prevail, unless defeated by utter insolvency of such officials."

Again, in *Webster* v. *Douglas County,* 102 Wis. 181, 77 N. W. 885, 72 Am. St. 870, the doctrine stated in

*Land, etc., Co.* v. *McIntyre,* 100 Wis. 245, 75 N. W. 964, 69 Am. St. 915, was reaffirmed in these words: "It is well settled in this state that a taxpayer may maintain an action in equity, on behalf of himself and all other taxpayers, to restrain public officers from paying out the public money for illegal purposes. and may also, under the proper circumstances, compel public officers, and even third persons, to repay into the public treasury money already paid out illegally. These propositions do not require further discussion."

The case brought here by this record is in the nature of a suit in equity to charge the appellee Casper for moneys belonging to the county wrongfully obtained by him, and now unlawfully withheld. The complaint shows (although with less fulness and particularity than could be wished) that the board of commissioners was requested by the appellants to bring an action for the recovery of the said moneys, and that they refused to do so. Under these circumstances, we are of the opinion that the appellants, as taxpayers, had such an interest in the public funds wrongfully withheld and appropriated by the appellee Casper as authorized them to institute an action in their own names for the benefit of themselves and all others having a common interest with them in the restitution of the said revenues; the board of commissioners being joined as a defendant.

No question is made by the appellees as to the illegality of the allowances made to Casper which are sought to be recovered in this suit. It is perfectly clear that many of them were wholly unauthorized, and it is not necessary for us to consider them in detail.

The complaint was sufficient, and the court erred in sustaining the demurrers to it. Judgment reversed, with directions to overrule the demurrers to the complaint, and for further proceedings in conformity to this opinion.

Jordan, J., did not participate in this decision.