PRESTON R. RICHARDSON, ELIZABETH A. REILLY
and JOHN M. BEESON,
Plaintiffs,

*vs.*

DONALD G. BLACKBURN, DOROTHY BANTON, GRENFELL PRIOR
and MARY FORSYTH,
Defendants.

*New Castle, January 21, 1963.*

*Gerald Z. Berkowitz,* of Wahl, Greenstein & Berkowitz, Wilmington, for plaintiffs.

*William Prickett, Jr.,* of Prickett, Prickett & Tybout, Wilmington, for defendants, Blackburn, Prior and Forsyth.

*Louis L. Redding,* Wilmington, for defendant, Dorothy Banton.

SEITZ, Chancellor: Plaintiffs as taxpayers of the State of Delaware bring this action on behalf of all such taxpayers against certain employees of an agency of the State, known as the Youth Services Commission, to recover for the State money allegedly illegally paid them by the State to their knowledge. The defendants have moved to dismiss and this is the decision on the grounds which have been briefed.

Counsel for all defendants contend that the Court of Chancery has no jurisdiction because the complaint shows on its face that the relief sought is a sum certain. Counsel go on to argue that even an accounting will not be allowed in equity generally unless some fiduciary relationship or other equitable basis of jurisdiction also appears. One difficulty with counsels' arguments is that they overlook a basic feature of this complaint. The right sought to be enforced belongs primarily to the State of Delaware. Otherwise stated, it is the State's money which is allegedly involved. Plaintiffs sue only derivatively as members of the taxpayer class because the State through the then Attorney General refused to sue. Thus, regardless of the certainty as to the amount involved and the presence or absence of a fiduciary relationship, this type of action would in all probability not be entertained at law because of its derivative nature. While some courts in other jurisdictions may have "sluffed over" this factor in resolving their cases, *e.g., Buck v. Bender, Iowa,* 159 *N.W.* 990, I think that the courts of this State recognize the jurisdictional importance of the distinction between direct and derivative actions, apart from the class action factor. It is certainly recognized in stockholders' derivative actions, *Rebstock v. Lutz,* 39 *Del.Ch.* 25, 158 *A.2d* 487; *Schleiff v.*

*Baltimore & Ohio R. Co.,* 36 *Del.Ch.* 342, 130 *A.2d* 321, which are at least substantially analogous.

I therefore conclude that there is no merit to the jurisdictional arguments advanced by the defendants. See *Armstrong v. Richards,* 128 *Fla.* 561, 175 *So.* 340.

I now consider the additional grounds for the motion to dismiss asserted solely on behalf of the defendant Banton. It is first contended that plaintiffs as taxpayers lack standing to sue because they show neither pecuniary loss nor violation of law.

Defendant Banton seems to argue that it is not clear that the plaintiffs' complaint alleges a violation of law in the making of the payments. This matter comes on a motion to dismiss and all reasonable inferences are therefore drawn in favor of plaintiffs' complaint. The allegations are certainly sufficient to withstand the objection made. The suggestion by defendant that the funds allegedly illegally paid may have come to the State from the Federal Government is certainly no answer, at least in connection with the disposition of this motion.

Defendant Banton argues that plaintiffs show no pecuniary loss and thus have no standing to sue. This amounts to a contention that a taxpayer of the State suffers no pecuniary loss when State funds are distributed illegally (as here alleged). I am satisfied that a taxpayer of the State, who is required to support the State, is sufficiently adversely affected when public money is illegally disbursed that he should be accorded the status necessary to maintain this type of action. This is so regardless of the amount involved. The rule commends itself not only for its therapeutic value but also because it has the support of reasoned authority elsewhere. Indeed, *Haddock v. Board of Public Education in Wilmington,* 32 *Del.Ch.* 245, 84 *A.2d* 157, by way of dictum, recognizes the existence of such a right of action at least at the injunctive stage. See 48 *A.L.R.* 588. There is just as much reason to grant an appropriate remedy even after an illegal payment has been made. See 18 *McQuillin, Municipal Corps.,* § 52.18; *Zuelly v. Casper,* 160 *Ind.* 455, 67 *N.E.* 103, 63 *L.R.A.* 133. I am unable to agree with defendants' counsel that the portion of the *Zuelly* opinion with which we are concerned turned on the exist-

ence of a statute. Nor is there any basis in logic or policy for exempting State officials in contrast to county and local officials from the operation of the principles here announced. Compare *Wertz v. Shane,* 216 *Iowa* 768, 249 *N.W.* 661 and see 58 *A.L.R.* 588. They do no violence to the sovereign immunity doctrine because the action is for the State's benefit. To the extent the authorities cited by defendant may be inconsistent with the views here announced they are not deemed persuasive.

In view of plaintiffs' amendment I assume that defendants have now withdrawn their objection to the complaint on the ground that it does not show a proper demand by plaintiffs to enforce the claim. Thus, I am not called upon to pass upon any aspect of that matter. If my assumption is incorrect, counsel should promptly so advise.

I conclude that the grounds briefed in support of the motions to dismiss are without merit. No question of joinder is now raised. I assume that counsel are not pressing the other grounds of their motions and that it is therefore in order to deny such motions.

Present order on notice.